UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

TONY CRAWFORD, ET AL.                          CIVIL ACTION

v.                                             NO. 14-1190

STATE OF LOUISIANA, ET AL.                     SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are two motions: (1) the plaintiffs' motion to vacate and set aside this Court's February 23, 2015 Order and Reasons granting the defendants' motion for summary judgment; and (2) the defendants' motion for entry of final judgment under Rule 54(b).  For the reasons that follow, the motions are DENIED.

**Background**

This litigation arises from the allegedly racially discriminatory administration of the Louisiana Medical Transportation Program.

The State of Louisiana, through its Department of Health and Hospitals, initiated the Louisiana Medical Transportation Program with the goal of creating means of transportation for patients to travel to their doctor's office visits.  The program receives 70% of its funding from the Federal government and 30% from the State. The Louisiana Medical Transportation Program consists of four components, but at issue here are the Non-Emergency Ambulance Provider (NEA) and the Non-Emergency Medical Transportation

1

Provider (NEMT).  It is alleged that the NEA providers are 100% Caucasian while the NEMT providers are 99% African American.

The plaintiffs[1] are, or were formerly, business owners registered as NEMT providers with the Department of Health and Hospitals.  All plaintiffs had been Medicaid certified to transport patients to and from their medical appointments.  The defendants include the State of Louisiana, acting through its Department of Health and Hospitals, the Department of Health and Hospitals, Kathy Kiebert, in her official capacity as Secretary of Health and Hospitals, and Ronald W. Johnson, Steffan Rutledge, Randy Davidson, Steve Erwin, and Kimberly Sullivan, all of which are named in their individual and official capacities.

Plaintiffs allege that, as NEMT providers, they were discriminated against, even though they were providing services identical to NEA providers, which were preferred by the State program.  For example, should an NEMT provider bring a dialysis patient to and from the doctor's office, they would receive $18.32 total, while an NEA provider would receive $334 for the trip plus mileage reimbursement in the amount of $6.57 per mile. Additionally, the plaintiffs claim that NEMT providers are not allowed to contract with other entities to provide medical transportation while NEA may contract with other entities such as

---

[1]There are twenty six individuals and twenty six corporations and/or business entities named as complainants in the matter.

nursing homes.  The plaintiffs also allege that NEA providers may submit invoices immediately while NEMT providers may only submit invoices at the beginning of the month for services rendered the previous month.  This treatment, they insist, adversely impacts NEMT providers' cash flow.

The plaintiffs further allege that defendants retaliated against those plaintiffs who questioned, criticized, or complained about the aforementioned discriminatory practices.  Specifically, the defendants allegedly brought bogus violation charges against plaintiff, Tony Crawford, singling him out as follows:

> (1) he misrepresented the seating capacity of his van, and therefore, his trips would have to be reduced;
> (2) he was not properly licensed, and therefore, was faced with imminent termination;
> (3) he was not properly insured, and therefore, was faced with suspension or termination; and
> (4) he reported his trips improperly, and therefore, could not be paid for the ones which were allegedly improperly documented.

The plaintiffs suggest that the purpose of these retaliatory tactics was to harass, threaten suspension or termination, delay plaintiffs' ability to make trips and delay and reduce plaintiffs' ability to get paid.

On May 21, 2014, the plaintiffs sued the defendants, alleging violations of Title VI and VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983.  They seek $300,000,000 in damages.  On September

3

17, 2014, the plaintiffs filed their First Supplemental and Amending Complaint; they added plaintiffs, corrected spelling errors, and clarified plaintiffs' status as either former or current business owners. On October 17, 2014, the plaintiffs filed an ex parte motion to withdraw their claims asserted under Title VII of the Civil Rights Act of 1964; the Court granted the motion on October 20, 2014.[2] The plaintiffs then filed a second supplemental and amending complaint in which they added additional plaintiffs, along with an additional claim for an alleged Thirteenth Amendment violation.

On February 23, 2015, this Court granted the defendants' motion for summary judgment in which they sought dismissal of the plaintiffs' Title VI claims; finding that the motion was unopposed and that it had merit, the Court dismissed the plaintiffs' Title VI claims. Three days later, the Court issued an Order and Reasons in which it granted the defendants' motion to dismiss the plaintiffs' Thirteenth Amendment claim. On April 6, 2015 the Court issued an Order granting as unopposed the defendants' motion for summary judgment, dismissing with prejudice the plaintiffs' Fourteenth Amendment claims brought pursuant to 42 U.S.C. § 1983; the plaintiffs' final claim. Having dismissed all of the plaintiffs'

---

[2]Prior to the filing of the plaintiffs' ex parte motion, defendants filed a motion to dismiss the same Title VII claims. Because the Court granted the plaintiffs' motion to withdraw the Title VII claims, the defendants' motion to dismiss was denied as moot.

claims by separate orders, the plaintiffs now ask the Court to vacate and set aside its Order and Reasons granting the defendants' motion for summary judgment and dismissing the plaintiffs' Title VI claims.  And the defendants now seek entry of final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.

I.

Rule 54(b) of the Federal Rules of Civil Procedure provides:

> When an action presents more than one claim for relief --
> whether as a claim, counterclaim, crossclaim, or third-
> party claim -- or when multiple parties are involved, the
> court may direct entry of a final judgment as to one or
> more, but fewer than all, claims or parties only if the
> court expressly determines that there is no just reason
> for delay.  Otherwise, any order or other decision,
> however designated, that adjudicates fewer than all the
> claims or the rights and liabilities of fewer than all
> the parties does not end the action as to any of the
> claims or parties and may be revised at any time before
> the entry of a judgment adjudicating all the claims and
> all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  District courts retain discretion to revise interlocutory orders.  <u>Calpetco 1981 LP v. Marshall Exploration, Inc.</u>, 989 F.2d 1408, 1414-15 (5th Cir. 1993)(citing <u>Avondale Shipyards, Inc. v. Insured Lloyd's</u>, 786 F.2d 1265, 1269 (5th Cir. 1986)).  In considering such requests, courts generally apply the same standard to motions under Rule 54(b) as to motions under Rule 59(e).  Rule 59(e) allows a court to alter or amend a judgment if the movant can establish a manifest error of law or can present newly discovered evidence.  Fed. R. Civ. P. 59(e).

"A Rule 59(e) motion 'calls into question the correctness of

a judgment.'" <u>Templet v. Hydrochem, Inc.</u>, 367 F.3d 473, 478 (5th Cir. 2004) (quoting <u>In re Transtexas Gas Corp.</u>, 303 F.3d 571, 581 (5th Cir. 2002)).  Because of the interest in finality, Rule 59(e) motions may only be granted if the moving party shows there was a mistake of law or fact or presents newly discovered evidence that could not have been discovered previously. <u>Id.</u> at 478-79. Moreover, Rule 59 motions should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings.  <u>See</u> <u>id.</u> at 479; <u>Rosenblatt v. United Way of Greater Houston</u>, 607 F.3d 413, 419 (5th Cir. 2010)("a motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued'")(citing <u>Rosenzweig v. Azurix Corp.</u>, 332 F.3d 854, 864 (5th Cir. 2003)(quoting <u>Simon v. United States</u>, 891 F.2d 1154, 1159 (5th Cir. 1990)).  The grant of such a motion is an "extraordinary remedy that should be used sparingly." <u>Indep. Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.</u>, 114 Fed.Appx. 137, 143 (5th Cir. Nov. 11, 2004) (citing <u>Templet</u>, 367 F.3d at 479).  The Court must balance two important judicial imperatives in deciding whether to reopen a case in response to a motion for reconsideration: "(1) the need to bring the litigation to an end; and (2) the need to render

6

just decisions on the basis of all the facts." Templet, 367 F.3d at 479. The plaintiffs asks this Court to reconsider its Order and Reasons dated February 23, 2015 in which the Court granted summary judgment in the defendants' favor, dismissing the plaintiffs' Title VI claim.[3]

First, the Court finds that plaintiffs' counsel's excuse for failing to respond to the motion for summary judgment is not defensible. The HTML receipt in the docket sheet shows that Ernest Lake Jones (ejlaw@bellsouth.net) received electronic notification that the defendants' filed their motion for summary judgment on Title VI grounds on January 28, 2015. Even indulging counsel's affidavit and explanation that additional, pro hac vice counsel had yet to enroll on the case, there is no explanation that satisfies the Court that notification of the defendants' filing was not sent to, or received by local counsel on January 28. (Counsel admits, the Court underscores, that he received other notices in the case at the same email address). Nor does counsel explain why he could not simply check the rather active docket himself out of an abundance of caution where, as counsel admits, the defendants had

---

[3]Of course, had the plaintiffs filed a Rule 59 motion, it would be untimely. The plaintiffs have styled their motion as one under Rule 60. The defendants point out, correctly, that the proper procedural vehicle for seeking reconsideration of one of the Court's interlocutory orders is by Rule 54(b). Accordingly, the Court applies the Rule 59 jurisprudence applicable to what should have been styled as a Rule 54(b) request to revise this Court's prior ruling.

filed more than one dispositive motion (as well as other discovery motions). Had he done so between January 28 and February 25, he would have noticed the pending motion, before this Court granted it.

Although the Court does not accept counsel's explanation, out of fairness to the individual plaintiffs, the Court nevertheless will consider the opposition papers and accompanying affidavits that the plaintiffs have submitted in support of their request that the Court reconsider its Order and Reasons granting the defendants' Title VI summary judgment motion. With scant legal analysis, the plaintiffs submit that consideration of their affidavits will persuade the Court that disputed factual issues persist for trial. The Court disagrees.

To place these opposition papers in context, on February 23, 2015, the Court issued an Order and Reasons granting the defendants' motion for summary judgment on the plaintiffs' Title VI claims. The Court noted that the motion was unopposed. Notably, however, the Court also determined that the motion had merit; the Court observed:

> Plaintiffs allege that they are certified Medicaid providers (non-emergency medical transport, or NEMT, providers) that transport Medicaid patients to medical appointments. Plaintiffs allege that NEMT providers are primarily owned by African Americans and that they are treated and paid differently by the State administrator defendants than the primarily Caucasian-owned non-emergency ambulance providers (NEA), even though NEMT and NEA provide identical transportation services. (The plaintiffs' Title VII claims were voluntarily dismissed

on October 20, 2014).  Among other claims, the plaintiffs allege that the defendants' preferential treatment of NEA in administration of the medical transportation programs violates 42 U.S.C. § 2000(d).

Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(d) states:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

To prevail on a claim under Title VI, a plaintiff must prove that the defendant received federal financial assistance and that the defendant engaged in *intentional* discrimination based on race, color, or national origin. See Alexander v. Sandoval, 532 U.S. 275, 280 (2001); Pathria v. Univ. of Texas Health Science Cetner at San Antonio, 531 Fed.Appx. 454, 455 (5th Cir. 2013)(unpublished, per curiam).  Defendants concede that Title VI applies to these programs: NEMT and NEA are Medicaid providers that receive federal money.  However, defendants contend that they are entitled to summary judgment dismissing the Title VI claims because the plaintiffs cannot prove intentional racial (or other illegal) discrimination.  Given the record, the Court agrees.

The record reveals that the State administrators have reasons for treating NEMT and NEA differently.  That is, the primary reason for any fee disparity between NEMT and NEA relates to the rendition of health care by licensed professional health care providers and the use of specialized medical equipment by ambulance providers. Whereas the NEMT providers simply drive Medicaid recipients to medical appointments (with schedules set by an outside dispatching firm based on state law), NEA providers are required to obtain proof of medical necessity before undertaking transport and the services NEA provides goes beyond transportation and includes providing medical care.  More specifically, the programs have separate and distinct goals such that NEA providers are subject to more stringent specialized qualifications and equipment requirements compared to NEMT providers. The defendants categorically deny illegal discrimination and submit that the plaintiffs cannot prove their case of intentional discrimination in light of the presence of

legitimate reasons for the fee disparity between NEMT and
NEA providers; disparity is insufficient to prevail on a
Title VI claim.

Federal Rule of Civil Procedure 56 instructs that
summary judgment is proper if the record discloses no
genuine issue as to any material fact such that the
moving party is entitled to judgment as a matter of law.
No genuine issue of fact exists if the record taken as a
whole could not lead a rational trier of fact to find for
the non-moving party. See Matsushita Elec. Indus. Co. v.
Zenith Radio., 475 U.S. 574, 586 (1986). Summary
judgment is also proper if the party opposing the motion
fails to establish an essential element of his case. See
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
In this regard, the non-moving party must do more than
simply deny the allegations raised by the moving party.
See Donaghey v. Ocean Drilling & Exploration Co., 974
F.2d 646, 649 (5th Cir. 1992). Rather, he must come
forward with competent evidence, such as affidavits or
depositions, to buttress his claims. Id. The
plaintiffs, who bear the burden of proving intentional
discrimination to succeed on their Title VI claim, have
failed even to respond to the defendants' motion for
summary judgment. The plaintiffs have failed to
establish an essential element of their Title VI case:
intentional discrimination. Thus, the defendants have
shown entitlement to judgment as a matter of law on the
plaintiffs' Title VI claim.

As a threshold matter, the Court finds that the plaintiffs'

submission does not establish entitlement to the extraordinary

remedy of reconsideration. Indeed, the plaintiffs' papers

establish neither a manifest error of law or fact, nor present

"newly discovered" evidence; rather, the plaintiffs advance

arguments which could, and should, have been made before the Court

issued its Order and Reasons. Nevertheless, even after the Court

carefully considers the plaintiffs' papers and affidavits, the

submission fails to persuade the Court that it erred in granting

the defendants motion.  Simply put, the record still establishes that the plaintiffs have failed to plausibly focus an essential element of their case: intentional discrimination.  Even supplementing the prior summary judgment record with the plaintiffs' affidavits, no genuine dispute as to the material fact of intentional discrimination is raised.  Even assuming that the plaintiffs' lengthy affidavits (which are at times difficult to follow and include extraneous, irrelevant information)[4] are competent summary judgment evidence, each of the plaintiffs simply

---

[4]A review of the plaintiffs' affidavits demonstrates, at most, poor or erratic administration of the transportation program, simple denials directed to the defendants' motion, and conclusory beliefs about what "we [the plaintiffs] can show at trial."  This is insufficient to withstand a supported motion for summary judgment; facts, not speculation, are required when confronted with a supported motion for summary relief.  The Court notes that the contents of many affidavits are inadmissible as not based on personal knowledge, and not setting forth facts that are based on competent evidence.  For example, one plaintiff claims that "[t]rough circumstantial evidence and connecting testimony of the dispatchers and assigners of trips, I will show that these in between transit dispatchers were directed and instructed by employees of DHH to assign individuals to Caucasian transporters based on false representations that the NEMT transporter was no longer in business, or was suspended, or was not available to transport them."  Another plaintiff states that she believes that she is mistreated by DHH because she is an elderly black woman; she offers an anecdote that her company was scheduled for a ride along with the DHH Program Manager during which time her van's air conditioner was inoperable so she attempted to use her personal vehicle for the ride along.  She says her trips were then suspended.  Another plaintiff states that she was "threatened" for "sending back trips . . . when traffic conditions and time constraints created conflicts in picking up clients at different locations at the same time and were fully justified" and that she once asked for an increase in pay to transport a particular client and an increase was approved.

speculate and conclude that they felt or believed that they were
being discriminated against (or, in some cases, personally targeted
or threatened by a certain former DHH administrator), but they fail
to offer up any fact issue concerning the record submitted by the
defendants on the issue of the reasons underlying any disparate
treatment.  As the Court previously observed, the summary judgment
record showed that the State administrators had non-discriminatory
reasons for treating NEMT and NEA differently.   That is, the
primary reason for any fee disparity between NEMT and NEA in the
administration of the medical transportation program relates to
"medical necessity;" the rendition of health care by licensed
professional health care providers and the use of specialized
medical equipment by ambulance providers.   The plaintiffs'
affidavits do not address, and, therefore, fail to call into
question this record finding on the discrepancy between the
differing functions and services provided by the transportation
providers.[5]  Accordingly, given the absence of evidence supporting
the non-moving parties' case, the plaintiffs' motion to vacate the

_____

[5]In fact, it is not clear that the plaintiffs in their
affidavits are acknowledging a disparity between NEMT and NEA
service providers.  They submit no evidence that the services they
provide are the same as the services provided by the other
transportation providers.  Moreover, the plaintiffs fail to
challenge the defendants' explanation regarding the rules and
regulations governing the program.  Finally, the plaintiffs have
failed to offer factual support for their "beliefs" about the
racial composition of these two service providers.  Speculation
does not overcome an otherwise supported motion for summary
judgment.

Court's February 23, 2015 Order and Reasons is DENIED.  Finally,
now that all claims have been dismissed by separate orders, the
defendants' motion for entry of final judgment under Rule 54(b),
which is focused on certifying for final judgment rulings when
"fewer than all" claims have been resolved, is DENIED as moot.  A
final judgment as to all claims is now warranted.

New Orleans, Louisiana, April 30, 2015

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE